**In re ALL–TYPE PRINTING, INC., Debtor.**

**Michael J. Daly, Trustee, Plaintiff,**

**v.**

**Ralph A. Fusco and Shirley Fusco, Defendants.**

**Bankruptcy No. 96–30564.**
**Adversary No. 96–3060.**

United States Bankruptcy Court, D. Connecticut.

March 12, 2002.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

D. Kirt Westfall, Westfall & Rudnick, LLC, New Haven, CT, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S COMPLAINT FOR AVOIDANCE AND RECOVERY OF FUNDS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

The captioned adversary proceeding presents a dispute concerning payments made by the Debtor to and on behalf of a retired principal of the Debtor. The Chapter 7 Trustee seeks to recover those payments from the principal and his spouse through utilization of certain of the avoidance and recovery powers provided him under the Bankruptcy Code. As set forth in more detail hereafter, judgment will enter in favor of the Plaintiff–Trustee, avoiding, as preferential, only those transfers made within the one-year period prior to the filing of the instant bankruptcy case.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F) and (H).

### III. FINDINGS OF FACT

The Court's findings of fact are derived from (i) the evidence adduced at trial and (ii) the Court's independent examination of the official record of the instant case and adversary proceeding.

1. In or about 1960, three individuals— Dominic DiVerniero (hereafter, "Dominic"), Peter L. Fusco (hereafter, "Peter"), and Defendant Ralph A. Fusco (hereafter, "Ralph")—founded and incorporated All–Type Printing, Inc. (hereafter, "All–Type") as a general printing concern operating at a facility located at 1661 Dixwell Avenue, Hamden, Connecticut (hereafter, the "Real Estate").

2. At all relevant times, the shareholders of All–Type were Dominic, Peter and Ralph (hereafter collectively, the "Shareholders")—with each holding an approximate one-third equity interest. Also, each was a director and officer; and prior to March, 1992, all participated in the day-to-day operation of All–Type's business.

3. The Shareholders were also partners in Communications Realty (hereafter, the "Partnership")—an entity which owned the Real Estate and leased it to All–Type for what was, at all times relevant to this adversary proceeding, a below-market rental (hereafter, the "Lease").

4. During their employment by All–Type, the Shareholders each received a salary and certain customary perquisites. All–Type did not, however, establish a pension plan on their behalf, or otherwise provide for retirement income for them. Instead, it appears that they chose to rely upon personal savings and individual investments—specifically, the value of their shares in All–Type (hereafter, the "Shares")—to provide resources for their retirement years.

5. Ralph was the first of the Shareholders to decide to retire; as early as 1988, he began making preparations to leave the employ of All–Type. Negotiations among All–Type, Ralph, and the other Shareholders regarding Ralph's retirement focused upon a purchase of his Shares by All–Type.

6. On or about March 12, 1992, the Shareholders met in an attempt to reach a final agreement on the terms of Ralph's retirement (hereafter, the "March 12 Meeting"). Incident to the March 12 Meeting, the parties memorialized an *interim* agreement "with respect to [Ralph's] retirement" through their execution of a certain letter agreement on All–Type letterhead dated "March ___, [sic] 1992", and admitted into evidence in this proceeding as Exhibit F (hereafter, the "Letter Agreement"). Under the terms of the Letter Agreement, "pending the redemption of" his Shares, Ralph was to cease employment by All–Type effective March 28, 1992.

7. The terms of the Letter Agreement also included the following economic obligations on the part of All–Type:

(i) continued provision to Ralph of a "company car" (hereafter, the "Auto Benefit");

(ii) maintenance of existing or comparable "health and medical" insurance coverage for Ralph and his wife, Defendant Shirley Fusco (hereafter, "Shirley") (hereafter, the "Health Insurance Payments"); and

(iii) payment to Ralph of $750.00 per week (hereafter, the "Cash Payments").

These obligations of All–Type are hereafter referred to collectively as the "Retirement Debt". The Letter Agreement and the broader record make clear that these obligations were intended to exist only through the time of redemption of Ralph's Shares, and that the amount of the Health Insurance Payments and Cash Payments would ultimately be credited in All–Type's favor against the "redemption value" of Ralph's Shares.

8. The agreement reached at the March 12 Meeting was not intended by

any of the parties to be a *final* agreement.[1] There is some evidence in the record that a final agreement was elusive due to Ralph's insistence that his interest in the Partnership also be addressed, either through a buyout of that interest, or by a modification of the Lease to provide for payment of a market rate rental by All–Type.

9. No final agreement regarding the redemption of Ralph's Shares was ever reached among the parties, and those Shares were never redeemed.

10. Ralph ceased his full-time employment at All–Type on or about March 28, 1992.

11. All–Type made 77 weekly Cash Payments of $750.00 each between April 15, 1992 and October 15, 1993, after which time All–Type unilaterally ceased making the Cash Payments.

12. All–Type made Health Insurance Payments [2] to an insurance carrier on behalf of Ralph over the period April 1992 through March, 1995, in the total amount of $10,327.62.[3] In the same time period (hereafter, the "Benefit Period"), All–Type also made Health Insurance Payments in the total amount of $9,625.53 on behalf of Shirley.[4]

13. In connection with the Auto Benefit, All–Type made payments to an auto insurance carrier on behalf of Ralph in the Benefit Period in the total amount of $4,626.74 (hereafter, the "Auto Insurance Payments").[5]

14. The Health Insurance Payments and the Auto Insurance Payments are hereafter referred to collectively as the "Insurance Payments".

15. The percentage of the Insurance Payments paid by All–Type on behalf of the respective Defendants is as follows: Ralph—61%; Shirley—39%.

16. The Insurance Payments and Cash Payments (hereafter collectively, the "Payments") were consistently designated as "loans" to Ralph in All–Type's books and records.

17. The parties agree that a total of $1,346.21 of the Insurance Payments was payed on behalf of Ralph and/or Shirley in the one-year period preceding February 28, 1996 (hereafter, the "One–Year Payments").

18. In March of 1992, the financial health of All–Type was extremely poor, with no reasonable possibility of recovery.

---

1. The Letter Agreement states that the parties thereto would "continue to expeditiously negotiate and consummate the redemption of... [Ralph's Shares] in good faith and without unreasonable delay".

2. In addition to traditional medical insurance, All–Type made payments on behalf of Ralph and Shirley for life insurance and disability insurance. Although on a bare record such payments *could* be considered outside the scope of the "health and medical" language of the Letter Agreement, the testimonial evidence at trial established that the parties were aware that life and disability insurance had traditionally been part of the All–Type "health and medical" package, and intended that those components be part of the Retirement Debt.

3. To the extent necessary to make this Finding of Fact, the Court reconsiders its trial ruling on the admissibility of Exhibit B—an accounting summary sheet of payments to or on behalf of the Defendants, prepared by All–Type's bookkeeper, Lucille DiVerniero. The trial Transcript and Exhibit record are somewhat ambiguous as to whether, and to what extent, Exhibit B was admitted in full. Upon reconsideration, if necessary, the Court admits Exhibit B in full for the limited purpose of establishing the amounts of payments made by All–Type to or on behalf of the Defendants.

4. *See* fn. 3.

5. *See* fn. 3.

Although its balance sheet at that time showed a technically solvent entity, then, and at all times thereafter until its cessation of business, All–Type was engaged in a business for which its remaining assets were unreasonably small. And in the one-year prior to the Petition Date, All–Type was insolvent.

19. On February 28, 1996 (hereafter, the "Petition Date"), All–Type filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. Thereafter Michael J. Daly was appointed as trustee of All–Type's bankruptcy estate, and has actively engaged in the liquidation of its assets.

20. At the time of the trial of this adversary proceeding, Proof of Claim No. 12—the claim of Resource Net International (hereafter, "Resource Net"), in the unsecured amount of $57,694.30—had been filed with the Clerk in the instant bankruptcy case. That Proof of Claim states that Resource Net obtained a judgment against All–Type on February 28, 1996, for a debt incurred "2/92—12/94". The Trustee filed an objection to the Resource Net Proof of Claim on May 6, 1997, on the basis of insufficient supporting documentation. On June 17, 1997, however, the Trustee's Objection was formally withdrawn.

21. At the time of the trial of this adversary proceeding, Proof of Claim No. 24 (amending No. 23)—the claim of Ralph Fusco in the unsecured amount of $160,620.67—had been filed with the Clerk in the instant bankruptcy case. That Proof of Claim states a claim for "retirement/severance" and "rent". The Trustee objected to that Proof of Claim on May 6, 1997, as lacking a basis; and the Objection is still pending.

## IV. CONCLUSIONS OF LAW

The Trustee's Complaint states that he brings his Claims for Relief under the authority of Bankruptcy Code Sections 542(b), 544(b), 547(b) and 548(a).

## A. Trustee's Collection of a Debt— Code Section 542(b).

The Complaint's First Claim for Relief seeks a recovery from the Defendants under the authority of Bankruptcy Code Section 542(b), which provides in pertinent part as follows:

"... an entity that owes a *debt* that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee...."

11 U.S.C. § 542(b) (1996) (emphasis supplied).

The term "debt" is defined by the Bankruptcy Code as "liability on a claim". 11 U.S.C. § 101(12) (1996). The term "claim", in turn, means "*right to payment* ... or ... right to an equitable remedy for breach of performance if such breach gives rise to a *right to payment* ...." 11 U.S.C. § 101(5) (1996).

■ All–Type had no general "right to payment" from Ralph and/or Shirley by virtue of the Payments it made to them, and on their behalf. The Letter Agreement states that such payments would be *credited* toward, and *only in the event of,* a redemption of Ralph's Shares, *i.e.* All–Type enjoyed a specialized credit, not a general right to payment. Thus, notwithstanding All–Type's internal designation of the Payments as "loans", no "debt" was owed to All–Type by Ralph and/or Shirley due to such Payments.

■ Even if this Court were to hold that a specialized credit is a "right to payment", All–Type's right was *contingent* upon a redemption of Ralph's Shares, which never occurred. The language of

Section 542(b) does not provide for a trustee's collection of a contingent debt.

Accordingly, judgment shall enter in favor of the Defendants on the Trustee's First Claim for Relief.

## B. Trustee's Avoidance of Transfers Under State Law—Code Section 544.

### 1. Intent to hinder, delay or defraud Creditors.

In the Complaint's Fourth Claim for Relief the Trustee alleges that the Payments were made with "actual intent to hinder, delay or defraud" All–Type's creditors within the meaning of Section 52–552e(a)(1) of the Connecticut General Statutes.

C.G.S. § Section 52–552e(a)(1) provides in relevant part that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor... if the debtor made the transfer or incurred the obligation... *[w]ith actual intent to hinder, delay or defraud* any creditor of the debtor...." (emphasis supplied).

There is absolutely no basis in the record of this adversary proceeding to support a finding of fraudulent or obstructionist intent on the part of All–Type or its Shareholders. Accordingly, judgment shall enter in favor of the Defendants on the Trustee's Fourth Claim for Relief.

### 2. Constructively fraudulent transfers.

In his Complaint's Third Claim for Relief the Trustee alleges that the Payments are avoidable as *constructively* fraudulent transfers under the standards of Sections 52–552e and 552f of the Connecticut General Statutes.

Under Connecticut law the Trustee has the burden of proving the elements of C.G.S. §§ 52–552e and/or 552f by clear and convincing evidence. *Cf., e.g., Tessitore v. Tessitore,* 31 Conn.App. 40, 42–43, 623 A.2d 496 (1993) (decided under C.G.S. § 52–552 (repealed)).

At all relevant times, Sections 52–552e and 552f provided in pertinent part as follows:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, *if the creditor's claim arose before the transfer was made* or obligation was incurred and if the debtor made the transfer or incurred the obligation... without receiving a *reasonably equivalent value* in exchange for the transfer or obligation, and the debtor (A) was *engaged* or was about to engage *in a business* or a transaction *for which the remaining assets of the debtor were unreasonably small in relation to the business* or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

C.G.S. § 52–552e(a)(2) (1996) (emphasis supplied).

A transfer made or obligation incurred by a debtor is fraudulent *as to a creditor whose claim arose before the transfer was made* or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a *reasonably equivalent value* in exchange for the transfer or obligation and the debtor was *insolvent* at that time or the debtor became insolvent as a result of the transfer or obligation.

C.G.S. § 52–552f(a) (1996) (emphasis supplied).

The Trustee's avoidance rights with respect to fraudulent transfers and obligations are granted by Section 52–552h, which provides in pertinent part that—

(a) [i]n an action for relief against a transfer or obligation under sections 52–552a—52–552l, inclusive, a creditor... may obtain (1) *Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim....*

C.G.S. § 52–552h(a) (1996) (emphasis supplied).

### a. Trustee's Standing.

■ As is plain from the language of Sections 52–552e, 52–552f and 52–552h, transfer avoidance is available to the Trustee under state law only if he enjoys the status and rights of a creditor whose claim "arose before the transfer was made".

The Trustee's rights and standing as a "creditor" are supplied by Bankruptcy Code Section 544, which, as of the Petition Date, provided in relevant part, as follows:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is allowable under section 502 of this title....

11 U.S.C. § 544(b) (1996) (emphasis supplied). Consequently, under Section 544(b) the Trustee may only exercise the state-law rights of one or more creditors with allowable bankruptcy claims (hereafter, "Actual Creditor(s)"). And given the temporal limitations of Sections 52–552e and 52–552f, a trustee proceeding under Connecticut law has no "standing" to avoid fraudulent transfers unless the record reveals the existence of one or more Actual Creditors whose claims arose *prior* to the date(s) of the subject transfer(s). *See, e.g., Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996). The record of this case and

adversary proceeding reveals two Actual Creditors with claims arguably arising prior to the Petition Date; yet neither support the Trustee's standing in this proceeding vis-a-vis Ralph for the following reasons:

*Claim of Resource Net*—Proofs of Claim on file are "deemed allowed, unless a party in interest... objects." 11 U.S.C. § 502(a) (1996). Because the only objection to the Resource Net Proof of Claim was withdrawn prior to the trial of this adversary proceeding, that Proof of Claim is deemed allowed, and is therefore "allowable" under Code Section 502, as is required by Section 544(b). Nonetheless, the Proof of Claim, standing alone, fails to establish what magnitude of claim, if any, existed at the time of each of the Payments sought to be avoided. The Resource Net claim states that it was incurred "2/92—12/94", but that statement is ambiguous, at best, as to what size, *if any,* claim existed at the time of any given Payment. Because the Trustee did not develop the evidentiary record beyond the face of the Resource Net Proof of Claim, that claim cannot furnish his standing under Section 544.

*Claim of Ralph Fusco*—Because the Trustee's Objection to Ralph's Proof of Claim is still pending, that claim cannot be *deemed* allowable. Nonetheless, based upon the extensive record of this adversary proceeding, the Court must conclude that the Letter Agreement created an unsecured debt owed by All–Type to Ralph, namely the Retirement Debt. Yet the Court also concludes that Ralph's claim is an inappropriate basis for the Trustee's standing in an adversary proceeding seeking recovery from Ralph simply because the Court will not indulge the wholly fictional assumption that Ralph would seek to avoid transfers to himself.[6]

6. Even if the Court indulged this fiction, Ralph would certainly waive his claim, and thereby undermine the Trustee's standing.

Thus, his Claim furnishes no standing to the Trustee. Accordingly, the Trustee lacks standing to avoid the Payments vis-a-vis Ralph [7] as fraudulent transfers under Connecticut state law.

### b. Reasonably Equivalent Value

■ Even if the Trustee had established adequate standing to avoid the Payments, he would still be unable to avoid them since they were supported by "reasonably equivalent value".

■ In analyzing the voidability of the Payments as "transfers" under C.G.S. §§ 52–552e and 52–552f, the Court must focus on the nature of the discrete "exchange" which took place at the time of *each* of those transfers.

As the Court has already determined, Ralph entered into an agreement with All–Type in March of 1992, as memorialized by the Letter Agreement. That agreement created a contract whereunder All–Type promised to make the Payments (hereafter, the "Promise"). All–Type's payment Promise created a "debt" owing to Ralph—*i.e.* the Retirement Debt.

■ Each Payment made by All–Type pursuant to the Promise constituted a separate "exchange" within the meaning of C.G.S. §§ 52–552e and 552f. In each of those transactions, All–Type made an Payment to or for the benefit of Ralph and/or Shirley, and received in exchange a dollar-for-dollar satisfaction of the Retirement Debt. Satisfaction of an antecedent debt is explicitly acknowledged by C.G.S. § 52–552d(a) to be "value" for purposes of fraudulent transfer analysis. Thus, the individual satisfactions flowing from each

Payment provided "reasonably"—indeed, perfectly—equivalent value in exchange for such Payment.

The foregoing conclusion is premised upon the fact that All–Type's *incurring of the Retirement Debt* has not been avoided; the underlying analysis would be different had the Trustee also sought and obtained an avoidance of the incurring of that obligation. In that event the Payments could no longer be supported by the value of debt satisfaction since no debt would exist. There is little doubt that the Payments drained All–Type of desperately needed cash at a critical time in its history. However, any injury in that regard was inflicted at the time All–Type obligated itself to Ralph, not at the times of performance of that obligation. Simply put, in order to have a chance of prevailing on his Third Claim for Relief under the circumstances of this adversary proceeding the Trustee needed to seek to avoid the *incurring* of an *obligation*—the Retirement Debt—as well as the *transfer* of *property*—the Payments.

For the foregoing reasons, judgment shall enter in favor of the Defendants on the Trustee's Third Claim for Relief.

### C. Trustee's Avoidance of Payments Under Federal Law.

#### 1. Code Section 548: Fraudulent Transfers

■ In the Complaint's Second Claim for Relief, the Trustee alleges that the One–Year Payments are avoidable as *constructively* fraudulent transfers under the standards of Section 548 of the Bankrupt-

---

7. In potential contrast, it is possible, although *highly* improbable, that Ralph would seek to avoid fraudulent transfers to his wife, Shirley. Nonetheless, it is not necessary for the Court to consider the Trustee's standing vis-a-vis Shirley, since the avoidance of fraudulent transfers to Shirley is not otherwise viable, as detailed at Section IV.B.2.b. of these Findings of Fact and Conclusions of Law, *infra*.

cy Code. That Section provides in pertinent part as follows—

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

\* \* \* \* \* \*

11 U.S.C. § 548 (1996).

As under C.G.S. § 52–552e(a)(2) and 552f(a), the focus of the inquiry under 548(a)(2) must be upon the nature of the discrete "exchange" which took place at the time of *each* of the One–Year Payments.

For the reasons stated at Section IV. B.2.b. of these Findings of Fact and Conclusions of Law, All–Type received reasonably equivalent value in exchange for the One–Year Payments. Thus, those transfers cannot form a basis for recovery under Section 548(a)(2).

**2. Section 547: Preferential Transfers.**

In the Complaint's Fifth Claim for Relief the Trustee seeks to avoid the One–Year Payments under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

11 U.S.C. § 547 (1996).

■ The Trustee bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer. *See* 11 U.S.C. § 547(g) (1996).

■ The Court concludes that at all relevant times Ralph was a "creditor" of All–Type, in that he had a "right to payment" from All–Type. Ralph's right to payment in connection with the Retirement Debt was discussed by the Court in Section III.7. of these Findings of Fact and Conclusions of Law. Thus, the One–Year Payments were transferred from All–Type to an insurance carrier for the benefit of Ralph *on account of an antecedent debt*— the Retirement Debt—within the one-year

period prior to the Petition Date. Further, the Court concludes that at all relevant times Ralph was an "insider" of All–Type—as a shareholder, officer, and director—within the meaning of 11 U.S.C. § 101(31) (1996).

 At all relevant times Shirley, also, was a "creditor" of All–Type, in that she had a "right to payment" from All–Type. Shirley's right to payment is that of a third-party beneficiary of the Letter Agreement as to the Health Insurance Payments. A person has a right of action as a third-party beneficiary to a promise if all parties to the subject agreement intended that the promisor assume a direct obligation to the third party. *E.g.*, *Knapp v. New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386, 388 (1963). Such mutual intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. *Id.* The record in this proceeding is sufficient for the Court to conclude that the parties to the Letter Agreement all intended that All–Type assume a direct obligation to Shirley as well as Ralph with respect to one-half of the Health Insurance Payments—*i.e.* that portion of the Health Insurance Payments paid for the benefit of Shirley. Thus, Shirley's portion of the Health Insurance Payments paid in the one year preceding the Petition Date (hereafter, the "One–Year Health Insurance Payments"), were transferred from All–Type to an insurance carrier for the benefit of Shirley *on account of an antecedent debt.* The Court further concludes that at all relevant times Shirley was an "insider" of All–Type—as the rela-

tive of a shareholder, officer, and director—within the meaning of 11 U.S.C. § 101(31) (1996).

As previously found, All–Type was insolvent during the one-year prior to the Petition Date.

Finally, the transfer of the One–Year Payments to Ralph, and the One Year Health Insurance Payments to Shirley, enabled each of them to receive more than they would receive in a liquidation of All–Type under Chapter 7 had such payments not been made.

Accordingly, the One–Year Payments are avoidable by the Trustee under the authority of Code Section 547(b).[8]

Under Code Section 550, the property—or value thereof—which is the subject of a transfer avoided by a trustee can be recovered from, *inter alia,* "the initial transferee... or the entity for whose benefit such transfer was made...." Ralph and Shirley were the entities for whose benefit the One–Year Payments were made, and thus recovery can be had from them.[9] Therefore, the Trustee is entitled to judgment on his Fifth Claim for Relief against Shirley and/or Ralph in the amount of the One–Year Payments ($1,346.21).

The One–Year Payments were composed entirely of Insurance Payments. And because the proportion of the Insurance Payments paid by All–Type on behalf of Ralph was 61%, and Shirley was 39%, judgment shall enter against each in such proportions.

## V. CONCLUSION.

In light of the foregoing, judgment shall enter against the Defendants on the Plain-

---

8. The evidence, if offered for that purpose, was insufficient to establish an "ordinary course of business" or other affirmative defense under Code Section 547(c).

9. The Trustee did not name as defendants in this adversary proceeding the insurance carrier(s) or agent(s) who appear to have been the "initial transferee(s)" of the One–Year Payments.

tiff–Trustee's Fifth Claim for Relief as follows: (i) against Ralph in the amount of $821.19; and (ii) against Shirley in the amount of $525.02.

On all other Claims for Relief judgment shall be for the Defendants.

## JUDGMENT

This adversary proceeding having come on for trial; and the Court having this day issued its *Findings of Fact and Conclusions of Law on Trustee's Complaint for Avoidance and Recovery of Funds,* in accordance with which it is

**ORDERED** that a monetary judgment hereby enter in favor of the Plaintiff–Trustee against the Defendant Shirley Fusco in the amount of $525.02 on the Complaint's Fifth Claim for Relief; and on all other Claims for Relief judgment shall be in favor of said Defendant.

## JUDGMENT

This adversary proceeding having come on for trial; and the Court having this day issued its *Findings of Fact and Conclusions of Law on Trustee's Complaint for Avoidance and Recovery of Funds,* in accordance with which it is

**ORDERED** that a monetary judgment hereby enter in favor of the Plaintiff–Trustee against the Defendant Ralph A. Fusco in the amount of $821.19 on the Complaint's Fifth Claim for Relief; and on all other Claims for Relief judgment shall be in favor of said Defendant.